**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

JOSEPH LOCKWOOD

VERSUS

OUR LADY OF THE LAKE
HOSPITAL, INC.

CIVIL ACTION

NO. 17-00509-SDD-EWD

**RULING**

Before the Court is a *Motion to Dismiss and Alternative Motion to Stay* filed by Our Lady of the Lake Hospital, Inc. ("Defendant" or "OLOL").[1] Plaintiff Joseph Lockwood ("Plaintiff" or "Lockwood") has filed an *Opposition* to which the Defendant has filed a *Reply*.[2] The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. Oral argument is unnecessary. For the following reasons, the *Motion* shall be granted in part and denied in part.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On July 1, 2017, Lockwood, a deaf individual who communicates primarily in American Sign Language ("ASL") and has limited proficiency in English, sought emergency care at OLOL Hospital for his lacerated thumb.[3] Lockwood claims that, prior to his arrival at OLOL Hospital, his friend Timothy Harris ("Harris") called to request that an ASL interpreter be provided for Lockwood.[4] Despite Harris' request, Lockwood asserts that OLOL failed to provide him with an interpreter.[5]

Instead of providing him with an ASL interpreter or any other auxiliary aids or communications, Lockwood claims that OLOL's employees "attempted to communicate

---

[1] Doc. 10.
[2] Doc. 22 and Doc. 24.
[3] Doc. 1, p. 4.
[4] Doc. 1, p. 4.
[5] Doc. 1, pp. 4-5.

1

with [him] using a loud voice, lip-reading, or other rudimentary gestures."[6] According to Lockwood, one nurse tried to communicate with him by typing on her phone, but due to his limited understanding of written English, it was unsuccessful.[7]

Because Harris accompanied Lockwood during his hospital stay, OLOL's employees allegedly attempted to rely on Harris to communicate information to Lockwood.[8] However, Lockwood claims that Harris has limited sign language skills and lacks any extensive knowledge of medical terminology.[9]

After OLOL's Hospital staff treated his injury, but prior to his discharge, Lockwood claims that his mother, Carol Montgomery ("Montgomery"), arrived at the hospital.[10] At that time, OLOL's staff/employees had allegedly requested that Lockwood sign various documents; however, no sign language interpreter or VRI machine was provided to interpret the documents for Lockwood.[11] According to the *Complaint*, Montgomery protested the request. Subsequently, OLOL's staff/employees gave Montgomery "a perfunctory and general description of the papers and reiterated their request that" Lockwood sign them.[12] Although she is not a qualified or trained ASL interpreter and lacks extensive knowledge of medical terminology, Montgomery then allegedly interpreted the "perfunctory and general description of the papers" to her son.[13] Because it was apparent to him that no ASL interpreter was going to be provided to him, Lockwood claims that he elected to sign the documents although he did not fully comprehend them.[14]

---

[6] Doc. 1, p. 5.
[7] Doc. 1, p. 5.
[8] Doc. 1, p. 5.
[9] Doc. 1, p. 5.
[10] Doc. 1, p. 5.
[11] Doc. 1, p. 5.
[12] Doc. 1, p. 5.
[13] Doc. 1, pp. 5-6.
[14] Doc. 1, p. 5.

Lockwood filed the instant lawsuit on August 2, 2017 against OLOL for its alleged failure to provide him with an ASL interpreter, a Video Remote Interpreting ("VRI") machine, or any other auxiliary aids or accommodations, during his emergency room visit at OLOL Hospital. He has asserted claims against OLOL arising under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("RA"), Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA"), Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. §18116 ("ACA"), and the Louisiana Commission on Human Rights Act, La. R.S. § 51:2231, *et seq.* ("LCHR").[15] Because the Court finds that Section 1557 of the ACA incorporates the RA's definition of disability and provides the same protections for people with disabilities as the RA, the Court's analysis of the RA will apply equally to Lockwood's ACA claim.[16]

Lockwood claims that OLOL discriminated against him in violation of the RA on the basis of his disability by denying him meaningful access to the services, programs, and benefits that OLOL offers to other individuals, and by refusing to provide Lockwood with auxiliary aids and services to ensure effective communication. Similarly, Plaintiff alleges that OLOL violated Title III of the ADA by discriminating against him on the basis of his disability in "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of OLOL's Hospital and medical facility.[17] Lockwood claims that OLOL violated the ACA by discriminating against and continuing to discriminate against him solely on the basis of his disability, by denying him meaningful

---

[15] Doc. 1.
[16] Section 1557 of the ACA provides that "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . ." 42 U.S.C. § 18116(a)(2010).
[17] Doc. 1, pp. 10-11.

3

access to services, programs, and benefits offered to other individuals by OLOL, and by refusing to provide auxiliary aids and services necessary to ensure effective communication. Plaintiff further contends that OLOL discriminated against him by failing to provide sign language interpreters on site or through operable VRI machines. Additionally, Lockwood contends that OLOL has violated the LCHR by intentionally discriminating against him on the basis of his disability.

As a cook who lives in Baton Rouge, Lockwood claims that it is reasonably foreseeable that he may need medical services from OLOL Hospital in the future. Since OLOL Hospital is also his "hospital of choice," he "reasonably anticipates that he will encounter discrimination again in the future when he next returns to the hospital."[18]

As a result of the Defendant's alleged discriminatory treatment and failure to provide effective auxiliary aids and services, Lockwood claims that he experienced "humiliation, fear, anxiety, guilt, and emotional distress."[19] He seeks a declaratory judgment,[20] injunctive relief,[21] compensatory damages, reasonable costs and attorneys' fees.[22]

Before the Court is OLOL's *Motion to Dismiss and Alternative Motion to Stay*.[23] OLOL seeks dismissal of all of the Plaintiff's claims because they sound in malpractice,

---

[18] Doc. 1, pp. 7-8.
[19] Doc. 1, p. 7.
[20] Lockwood seeks a declaratory judgment "stating that OLOL's policies, procedures, and practices subjected [him] to unlawful discrimination in violation of the RA, ADA, Section 1557, and LCHR." Doc. 1, p. 15.
[21] Lockwood requests the issuance of an injunction that forbids "OLOL from implementing or enforcing any policy, procedure, or practice that denies deaf individuals, or their companions, meaningful access to and full and equal enjoyment of defendant's facilities, services or programs." Doc. 1, p. 15.
[22] Lockwood also seeks compensatory and nominal damages under the RA, ACA, and LCHR. He seeks reasonable costs, including expert fees, and attorney's fees pursuant to the ADA, RA, ACA, and LCHR. Doc. 1, p. 16.
[23] Doc. 10.

and have not been considered by a medical review panel. In the alternative, Defendant requests that the Court stay the litigation pending review of the state law claims by a medical review panel. Lockwood disagrees with the Defendant's arguments.

## II.     RULE 12(b)(6) LEGAL STANDARD[24]

At the motion to dismiss stage, the Court must accept the well-plead factual allegations in the complaint as true.[25] The Court views the complaint in the light most favorable to the plaintiff, resolving all doubts in his favor.[26] However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[27] The Court will not "strain to find inferences favorable to the plaintiff."[28] If the facts as plead allow the Court to conclude that plaintiff's claims for relief are "plausible," the motion must be denied.[29] To satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[30] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31]

---

[24] The Defendant did not address which federal rule it is seeking dismissal of Plaintiff's claims on prematurity grounds per the Louisiana Medical Malpractice Act. Therefore, the Court notes that it shall consider Defendant's motion in light of the Rule 12(b)(6) legal standard. *Collins v. New Orleans Home for Incurables*, Civil Action No. 15-1468, 2015 WL 4168727, *3 (E.D.La. July 9, 2015)(discussing how proper standard to evaluate motions to dismiss LMMA claims on prematurity grounds is the legal standard provided by Rule 12(b)(6)).
[25] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).
[26] *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).
[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[28] *Taha v. William Marsh Rice Univ.*, Civil Action No. H-11-2060, 2012 WL 1576099, *2 (S.D.Tex. May 3, 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[29] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[30] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[31] *Id.*

## III. ANALYSIS

OLOL moves to dismiss as premature all of Lockwood's federal and state law claims. According to OLOL, "[t]here can be no question that some, if not all, of plaintiff's claims are 'malpractice' as defined by the Louisiana Medical Malpractice Act."[32] Because Lockwood's claims fall within the purview of the Louisiana Medical Malpractice Act ("LMMA"), OLOL, a qualified health care provider under Louisiana law, contends that Plaintiff was required to submit his medical malpractice claims to a medical review panel for review prior to filing suit.[33] If nothing else, OLOL argues that "[g]iven that it is clear that at least some of the claims asserted by plaintiff are medical malpractice in nature, plaintiff cannot reasonably dispute that his Louisiana state law claims brought pursuant to the [LCHR] are subject to the [LMMA] and must be dismissed as premature."[34] Although it is undisputed by the parties that Lockwood did not submit his claims to a medical review panel prior to filing the instant lawsuit, Lockwood does dispute that his claims sound in medical malpractice. Lockwood directs the Court's attention to Judge Lance M. Africk's recent decision in the United States District Court for the Eastern District of Louisiana, *Esparza v. University Medical Center Management Corporation, et al.*, as further support for his position.[35]

---

[32] Doc. 10-1, p. 4.
[33] Doc. 10-1, p. 5. OLOL admits that it "is a qualified healthcare provider under Louisiana law." Doc. 10-1, p. 3.
[34] Doc. 10-1, p. 5.
[35] *Esparza v. Univ. Medical Center Management Corp.*, Civil Action No. 17-4803, 2017 WL 4791185 (E.D.La. Oct. 24, 2017).

## A. Overview of Louisiana's Medical Malpractice Act ("LMMA")

Under the LMMA, "[a]ll malpractice claims against health care providers . . . other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel."[36] The LMMA mandates that "[n]o action against a health care provider . . . or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel."[37] "Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such a claim has not first been presented to a medical review panel."[38] "The Supreme Court of Louisiana has interpreted this provision to not only require the plaintiff to *present* the claim to a medical review panel, but also to wait until 'the panel has *rendered its expert opinion* on the merits of the complaint' before filing suit."[39] Federal courts adjudicating Louisiana law claims recognize and enforce the LMMA's procedural prerequisite to suit.[40]

The LMMA defines "malpractice" as follows:

> any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood,

---

[36] LA. REV. STAT. § 40:1231.8(A)(1)(a)(2017).
[37] LA. REV. STAT. § 40:1231.8(B)(1)(a)(i)(2017). The medical review panel requirement is subject to waiver by agreement of the parties. LA. REV. STAT. § 40:1231.8(B)(1)(c)(2017). In this case, there has been no indication that the parties have agreed to such a waiver.
[38] *LaCoste v. Pendleton Methodist Hosp.*, 2007-CC-0008, 2007-CC-0016 (La. 9/5/07); 966 So.2d 519, 523.
[39] *Flagg v. Stryker Corp.*, 819 F.3d 132, 137-38 (5th Cir. 2016)(citing *Delcambre v. Blood Sys., Inc.*, 893 So.2d 23, 27 (La. 2005)(emphasis provided under *Flagg*)).
[40] *See, e.g.*, *Labouliere v. Our Lady of Lake Foundation,* Civil Action No. 16-00785, 2017 WL 4365989 (M.D.La. Sept. 29, 2017); *Bernius v. Ochsner Medical Center-North Shore, LLC*, Civil Action No. 16-14730, (E.D.La. Dec. 15, 2016).

tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.[41]

In *Coleman v. Deno*, the Louisiana Supreme Court set forth six factors for the courts to consider in determining whether a qualified healthcare provider's conduct falls within the scope of the LMMA.[42] The *Coleman* factors are as follows:

(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;

(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

(3) whether the pertinent act or omission involved assessment of the patient's condition;

(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

(5) whether the injury would have occurred if the patient had not sought treatment; and

(6) whether the tort alleged was intentional.[43]

The Louisiana Supreme Court has also instructed that "coverage of the Medical Malpractice Act should be strictly construed because the limitations of the Medical Malpractice Act on the liability of qualified health care providers is special legislation in the derogation of the rights of torts victims."[44]

---

[41] LA. REV. STAT. § 40:1231.1(A)(13)(2017).
[42] *Coleman v. Deno*, 2001-C-1517, 2001-1519, 2001-C-1521, (La. 2002), 813 So.2d 303, 315-16.
[43] *Id.*
[44] *Williamson v. Hosp. Service Dist. No. 1 of Jefferson d/b/a West Jefferson Medical Ctr.*, 2004-C-0451 (La. 2004); 888 So.2d 782, 786. (quoting *Sewell v. Doctors Hosp.*, 600 So.2d 577, 578 (La. 1992)).

1. Are Lockwood's Claims Intentional Torts?

In response to the Defendant's LMMA argument, Lockwood focuses on his LCHR claim.

Initially, Lockwood argues that because his LCHR claim is limited to intentional torts, the LMMA is inapplicable. Lockwood points to the following five (5) allegations in his *Complaint* to buttress his argument:

1. ¶79. Mr. Lockwood brings suit under the LCHR to the extent defendant's conduct *is based on <u>intentional acts</u> of discrimination*.

2. ¶80. The Department of Justice has published guidance materials which state that: "In a doctor's office, an interpreter generally will be needed for taking the medical history of a patient who uses sign language or for discussing a serious diagnosis and its treatment options."

3. ¶81. The injuries sustained by Mr. Lockwood are substantially certain to follow when a hospital fails to provide deaf persons with effective communication.

4. ¶82. The injuries sustained by Mr. Lockwood are the expected consequence of OLOL's failure to comply with the requirements and mandates of the ADA and the LCHR.

5. ¶83. Common sense also supports a finding that Deaf people who are not provided with the necessary reasonable accommodations will suffer discrimination and resultant injury.[45]

Considering the *Complaint* as a whole, the Court finds that these five allegations are conclusory. Moreover, Lockwood's LCHR claim does not exist in a vacuum. Although Lockwood offers the conclusory allegation that his LCHR claim is solely premised upon intentional acts of discrimination, a review of the remaining allegations throughout his *Complaint* contradicts his position.

---

[45] Doc. 1, p. 14.

## 2. Do Lockwood's Claims Fall Beyond the Scope of the LMMA?

As an alternative argument, Lockwood contends that OLOL has confused his LCHR claim with a claim for medical malpractice. He asserts that contrary to OLOL's position otherwise, this Court should find, as the *Esparza* court did, that the specific wrong alleged by Lockwood falls outside of the scope of the LMMA.

Like Lockwood, the plaintiff in *Esparza* was a deaf individual, whose primary mode of communication was ASL.[46] Esparza claimed that over a five month span, she visited the University Medical Center New Orleans ("Medical Center") on several occasions to receive medical care, including treatment for her broken arm, dental treatment, and laboratory work.[47] According to Esparza, during her visits the Medical Center did not provide her with an ASL interpreter to assist her in communicating with staff and learning health-care related information.[48] Instead, the Medical Center offered her the use of a faulty VRI machine, which proved to be an ineffective accommodation, and required her to resort to written English or the assistance of her mother or boyfriend to communicate with hospital staff.[49] Without the assistance of an ASL interpreter, Esparza alleged that she was unable to effectively communicate with hospital staff about the "nature, scope, and consequence" of her broken arm and dental treatment, treatment options, the use and side effects of medications, lab work, and women's health issues.[50] She also alleged that she could not understand various medical documents.[51] Like Lockwood, Esparza

---

[46] *Esparza*, Civil Action No. 17-4803, Doc. 1, pp. 2-5, and 16; Doc. 17, pp. 2-4, 6, and 17.
[47] *Id.*, Doc. 1, pp. 5-6, and 9; Doc. 17, pp. 6-8, and 10.
[48] *Id.*, Doc. 1, pp. 5-8, and 17; Doc. 17, pp. 6-10, and 17.
[49] *Id.*, Doc. 1, pp. 5-7, and 17; Doc. 17, pp. 6-8, and 17.
[50] *Id.*, Doc. 1, p 6; Doc. 17, pp. 7-8.
[51] *Id.*, Doc. 1, pp. 8-9; Doc. 17, pp. 9-10.

asserted her claims against the Medical Center and other defendants under Section 504 of the RA, Title III of the ADA, Section 1557 of the ACA, and the LCHR.[52]

The Court has reviewed the *Complaints* in *Esparza* and finds that unlike the plaintiff in that case, who did not "explicitly complain about the medical care that she received from the hospital," Lockwood did.[53] For instance, Lockwood claims that he was "not adequately advised of his diagnoses, prognoses, medications, or treatment."[54] As previously mentioned, Lockwood also alleged that he chose to sign certain medical documents prior to his discharge from the hospital, without "fully understanding what they said, what they obligated him [to] perform, or what rights he was waiving."[55] Based upon this allegation and others, Lockwood claimed that "he was deprived of his right to understand his diagnosis and treatment, to provide informed consent, and to maintain privacy with regard to his medical information."[56] Additionally, Lockwood further asserts that "he received services that were objectively substandard and that were inferior to those provided to hearing individuals."[57]

Based on the foregoing, the Court finds that in making his claims that OLOL violated the ADA, RA, ACCA, and the LCHR, Lockwood also made specific allegations about the substandard medical care he received while a patient at OLOL's Hospital.[58] Whether Lockwood received substandard medical treatment while he was patient at Defendant's hospital, clearly falls within the scope of the LMMA. Additionally, "[a]

---

[52] Esparza also asserted a claim under Title II of the ADA, which is not at issue in the pending matter. *Esparza*, Civil Action No. 17-4803, Doc. 1, pp., 3, 10-12; Doc. 17, pp. 3, 11-13.
[53] *Esparza*, 2017 WL 4791185 at 15; Civil Action No. 17-4803, Doc. 1 and Doc. 17.
[54] Doc. 1, p. 6.
[55] Doc. 1, p. 6.
[56] Doc. 1, p. 7.
[57] Doc. 1, p. 7.
[58] Doc. 1.

physician is required to provide his patient with sufficient information to allow the patient to make an informed and intelligent decision on whether to submit to the proposed course of treatment."[59] Therefore, "Louisiana courts have [also] held that the lack of informed consent is unintentional negligence and is subject to the provisions of the [LMMA].[60] As for Lockwood's assertion that the Defendant failed to maintain his privacy rights, because such a claim for breach of confidentiality is based on professional services rendered by a health care provider to a patient, his claim is also subject to the requirements of the LMMA.[61] Accordingly, the Court finds that Lockwood's claims sounds in medical malpractice.

### B. Dismissal of Lockwood's LCHR Claim

Lockwood does not dispute the Defendant's contention that, if his claims sound in medical malpractice, then his LCHR claim would be subject to the same procedural requirements as other state law claims with substantial overlap with the LMMA. In other words, Lockwood's LCHR claim must be presented to a medical review panel prior to the commencement of an action in any court.[62] After reviewing the record, there is no indication that Lockwood ever sought review of his LCHR claim by a medical review panel.[63] Therefore, the Court finds itself presented with the issue of prescription as it relates to Lockwood's state law claim.

---

[59] *Deykin v. Ochsner Clinic Foundation*, No. 16-CA-488, (La. App. 5 Cir. 4/26/17), 219 So.3d 1234, 1243.
[60] *Pardo v. Medtronic, Inc.*, Civil Action No. 10-1562, 2010 WL 4340821, at *1 (E.D.La. Oct. 26, 2010)(citing *Hodge v. Lafayette Gen. Hos.*, 399 So.2d 744, 746 (La. App. 3 Cir. 1981)). *See also, Williams v. Biomet Orthopedics, LLC*, Civil Action No. 16-795, 2017 WL 3713529 (M.D.La. Mar. 31, 2017)(discussing Louisiana state and federal cases finding that allegations or claims of lack of informed consent are covered under the LMMA).
[61] *Leger v. Spurlock*, 589 So.2d 40, at 43 (La.App. 1 Cir. 1991).
[62] LA. REV. STAT. § 40:1231.8(B)(1)(a)(i)(2017).
[63] The Court further notes that Lockwood has not represented to the Court that he does not intend to file a malpractice action.

Since the Court has determined that Lockwood's *Complaint* contains medical malpractice claims asserted under the LCHR, then Lockwood had one year from the date of the alleged acts, omissions, or instances of neglect by OLOL's employees to request a medical review panel.[64] Construing the allegations in Lockwood's *Complaint* in the light most favorable to him, the Court finds that July 1, 2017 was the last date of any alleged substandard medical malpractice by OLOL's employees.[65] Therefore, Lockwood had until July 2, 2018 to request a medical review panel.[66] As previously discussed, however, the record is devoid of any indication that Lockwood has ever submitted his claim to a medical review panel. Accordingly, the Court concludes, as it must, that Lockwood's state law claims asserted under the LCHR have prescribed and shall be dismissed with prejudice.

### C. Lockwood's Remaining Federal Claims

As for his federal claims, the point of contention between the parties is whether Lockwood's federal claims are "so intertwined with any state law claims for medical malpractice, or violation of the [LCHR], that they cannot be reasonably separated" so as to warrant their dismissal.[67] OLOL contends that the federal claims and any state malpractice claims cannot be reasonably separated so that they may be litigated in their respective courts. Therefore, allowing the federal claims to be litigated in federal court

---

[64] LA. R.S. § 9:5628(A)(2018)( "No action for damages for injury or death against any physician . . . arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect . . . ."). Because Defendant is a qualified health care provider, Lockwood had one year, or until July 2, 2018 to seek review with the medical review panel. La. Civ. Code art. 3456 ("If a prescriptive period consists of one or more years, prescription accrues upon the expiration of the day of the last year that corresponds with the date of the commencement of prescription."). *See supra* note 33.
[65] Doc. 1.
[66] Pursuant to La. Civ. Code art. 3454, "[i]n computing a prescriptive period, the day that marks the commencement of prescription is not counted."
[67] Doc. 10-1, p. 5.

while the state law claims are considered by a medical review panel "could potentially result in inconsistent judgments" against OLOL.[68] Lockwood disagrees, arguing that his federal causes of action need not comply with state law administrative exhaustion requirements. His argument relies upon principles of federal conflict and preemption. After considering the parties' differing opinions, the Court finds merit in the Plaintiff's position.

As Lockwood correctly notes, the Fifth Circuit has held that "private individual suits to enforce Section 504 rights can be brought without resort to administrative remedies."[69] The Fifth Circuit has also held that "[a]lthough a plaintiff must exhaust his or her administrative remedies before pursuing a Rehabilitation Act claim against a federal *agency*, it need not do so before suing a federal *grantee*."[70] In his *Complaint*, Lockwood has alleged that OLOL is the recipient of financial assistance. Therefore, the Court finds that the exhaustion of administrative remedies is not required.

OLOL offers no authority for its argument that when federal and state law claims are so intertwined, the federal claims should be dismissed. Therefore, the Court finds no merit in the Defendant's argument.

As this Court has previously found in two other cases involving deaf plaintiffs asserting RA and ADA claims against OLOL,[71] Judge Barbier's reasoning in *Bernius v. Ochsner Medical Center – North Shore, L.L.C.,* resolves the parties' disagreement

---

[68] Doc. 10-1, p. 6.
[69] *Camenisch v. Univ. of Tex.*, 616 F.2d 127, 135-36 (5th Cir. 1990), *vacated on other grounds* 451 U.S. 390 (1981).
[70] *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015)(emphasis original).
[71] *See Francois v. Our Lady of the Lake Hospital*, Civil Action No. 17-00393 (Doc. 76); *Labouliere v. Our Lady of the Lake Foundation et al.*, Civil Action No. 16-00785 (Doc. 50).

regarding the intersection of these federal claims and state administrative exhaustion requirements:[72]

> Ultimately, the Supremacy Clause of the United States Constitution controls the disposition of this issue. *See* U.S. Const. art. VI, cl. 2. Plaintiffs have brought a federal claim pursuant to 28 U.S.C. § 1331. Congress did not create an administrative exhaustion requirement when it passed the Rehabilitation Act, and the Fifth Circuit has held that administrative exhaustion is not required in the pursuit of a Rehabilitation Act claim when the defendant is a federal grantee. *See Taylor*, 798 F.3d at 284. Congress' purpose in passing the Rehabilitation Act was to "empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." *See* 29 U.S.C. § 701(b)(1); *see also Frame v. City of Arlington*, 657 F.3d 215, 230-31 (5th Cir. 2011)(discussing the purpose of the Rehabilitation Act and ADA). The Rehabilitation Act attempts to achieve this goal by providing a private cause of action to obtain relief in federal court. *See Prewitt v. U.S. Postal Service*, 662 F.2d 292 (5th Cir. 1981)("*Prewitt I*")(discussing the history and purpose of the Rehabilitation Act). Requiring a Rehabilitation Act plaintiff to exhaust state administrative procedures would stand in as an obstacle to the congressional intent of the Rehabilitation Act. *See Smith v. State of Ind.*, 904 F.Supp. 877, 880 (N.D. Ind. 1995)(finding, in the ADA context, that "[t]he defendant may not use the Indiana Medical Malpractice Act's requirement of presentation of claims to a medical review panel as a means to trump the plaintiff's claim under federal law").[73]

Relying on the foregoing analysis from *Bernius*, this Court finds that the Defendant's *Motion* shall be denied to the extent it seeks dismissal of Lockwood's federal claims on prematurity grounds.

### D. Is a Stay Warranted Pending the Outcome of the Medical Review Panel?

In the alternative, OLOL argues that the Court should stay this case while the state law claims are considered by a medical review panel, or until Lockwood asserts that he will not pursue his state law claims.[74] Because the Court has already concluded that

---

[72] *Bernius v. Ochsner Medical Ctr. – North Shore, L.L.C.*, Civil Action No. 16-14730, 2016 WL 10586188 (E.D.La. Dec. 15, 2016).
[73] *Id.* at *7.
[74] Doc. 10-1, pp. 6-7.

Lockwood's state law claims asserted under the LCHR have prescribed, the Court denies OLOL's argument as moot.

## IV. CONCLUSION

For the foregoing reasons, the *Motion to Dismiss and Alternative Motion to Stay* filed by Our Lady of the Lake Hospital, Inc. is hereby GRANTED IN PART and DENIED IN PART.[75]

Our Lady of the Lake Hospital, Inc.'s *Motion* is GRANTED as to Joseph Lockwood's Louisiana Commission on Human Rights claim. Joseph Lockwood's Louisiana Commission on Human Rights claim is hereby dismissed with prejudice.

Our Lady of the Lake Hospital, Inc.'s *Motion* is DENIED to the extent it seeks dismissal of Joseph Lockwood's Section 504 of the Rehabilitation Act claim, Title III of the Americans with Disabilities Act claim, and Section 1557 of the Patient Protection and Affordable Care Act claim.

Our Lady of the Lake Hospital, Inc.'s *Motion* is further DENIED as moot as to its request for a stay.

It is further ordered that the parties shall contact the Magistrate Judge in this matter to schedule a status conference.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on July 17, 2018.

*Shelly D. Dick*
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[75] Doc. 10.